**In re Richard C. SPITZER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 02–BG–69.

District of Columbia Court of Appeals.

Submitted Jan. 15, 2004.
Decided March 25, 2004.

Before STEADMAN and WASHINGTON, Associate Judges, and KING, Senior Judge.

PER CURIAM:

In this disciplinary proceeding against respondent Richard C. Spitzer, a member of the Bar of the District of Columbia Court of Appeals,[1] the Board on Professional Responsibility ("Board") has recommended to this court that reciprocal, but

1. Respondent has been administratively suspended from the Bar of the District of Columbia for nonpayment of dues since 1993.

not identical, sanctions be imposed and that respondent be suspended for thirty days and any reinstatement be subject to respondent demonstrating fitness and showing that he has refunded the unearned $1,500 retainer noted in the Maryland case. No exceptions to the Board's Report and Recommendation have been filed. The text of the Report and Recommendation is annexed to this opinion.[2]

On December 6, 2001, the Court of Appeals of Maryland disbarred respondent for disciplinary violations involving neglect of client matters and conduct prejudicial to the administration of justice that occurred in the spring of 1993. Respondent did not notify this court of his disbarment. However, upon receipt of notice by Maryland, on February 13, 2002, this court suspended respondent pursuant to D.C. Bar Rule XI, § 11(d) and directed the Board to recommend whether reciprocal discipline should be imposed. Respondent has failed to file the required affidavit pursuant to D.C. Bar Rule XI, § 14(g).

On March 15, 2002, Bar Counsel stated that while reciprocal discipline was justified, identical discipline was not, and recommended that respondent be suspended for at least thirty days and required to

demonstrate his fitness to practice law as a condition of reinstatement, and that he document payment of $1,500 to his former client in the Maryland matter.

 In its report and recommendation, the Board determined that respondent's misconduct in Maryland violated the following D.C. Rules of Professional Conduct: 1.3(a) (represent a client zealously and diligently), 1.4(a) (keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information), and 1.16(d) (take timely steps to protect a client's interest in connection with terminating representation). The Board noted that it did not conclude, nor did it need to conclude, whether respondent's unexplained failure to respond to the investigation by the Maryland disciplinary authority would have violated the Rule of Professional Conduct 8.1(b) (failure to respond to a lawful demand for information from a disciplinary authority) or 8.4(d) (serious interference with the administration of justice). The Board stated that a conclusion on this issue would not affect their recommendation of a thirty-day suspension with a fitness requirement.[3] *See In re Kuhn,* 764 A.2d 239 (D.C.2000).

2. This is a very odd, perhaps unique case, involving an individual who, for all we know, may be deceased. As the 2001 Maryland court order concludes, "In May 1993 the Respondent abandoned his law practice and disappeared from society. He has not been heard from since."That state of affairs continues to this day. The bizarre nature of Respondent's disappearance and the futile efforts of both the Maryland and District of Columbia disciplinary authorities to locate him are set forth in the Board's Report. As a consequence of his severance of any contacts with Maryland or the District, Respondent has been decertified in Maryland for nonpayment of the annual assessments for the Clients Security Trust Fund since June 10, 1994, and he has been administratively suspended from the practice of law in the Dis-

trict of Columbia for nonpayment of D.C. Bar dues since November 30, 1993.

3. Based on the record, namely respondent's disappearance and failure to notify the Bar of his new address, the Board could not find that respondent had *actual* knowledge of Maryland Bar Counsel's investigation in order to constitute a violation of D.C. Rule of Professional Conduct 8.1(b), which prohibits an attorney from *knowingly* failing to respond to Bar Counsel or other disciplinary authority. D.C. Rule of Professional Conduct 8.4(d) prohibits an attorney from interfering with the administration of justice. A failure to respond to Bar Counsel's investigation, combined with a failure to comply with a Board order qualifies as a violation of 8.4(d). See *In re Giles,* 741 A.2d 1062 (D.C.1999); *In re*

A rebuttable presumption exists that "the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Goldsborough,* 654 A.2d 1285, 1287 (D.C.1995) (citing *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992)). However, the Board and this court may impose a different sanction if it determines: 1) the misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction, and 2) the difference is substantial. *In re Sheridan,* 798 A.2d 516, 522 (D.C.2002) (quoting *In re Krouner,* 748 A.2d 924, 928 (D.C.2000) (quoting *In re Garner,* 576 A.2d 1356, 1357 (D.C.1990))). The first step considers whether the "discipline of the foreign jurisdiction is within the range of sanctions that would be imposed for the same misconduct in this jurisdiction." *See id.* We accept for present purposes the Board's conclusion that disbarment is outside the range of discipline this court has imposed for the rule violations respondent committed.[4] *In re Lewis,* 689 A.2d 561 (D.C.1997) is a similar case to this instance where the respondent, like Spitzer, violated D.C. Rules of Professional Conduct 1.3(a), 1.4(a), and 1.16(d) and received a thirty-day suspension with a fitness requirement.[5] *See also In re Bernstein,* 707 A.2d 371 (D.C.1998); *In re Kuhn, supra.*

The Board in this case recommends a thirty-day suspension. No exception has been taken to its report and recommendation. Therefore, the Court gives heightened deference to the Board's recommendation. *See* D.C. Bar R. XI, § 9(g)(2); *In re Delaney,* 697 A.2d 1212, 1214 (D.C. 1997). We find substantial support in the record for the Board's findings, and accordingly, we accept them. We adopt the sanction the Board recommended since it is not inconsistent with discipline imposed in similar cases. Accordingly, it is

ORDERED that Richard C. Spitzer is suspended from the practice of law in the District of Columbia for the period of thirty days, effective immediately, and reinstatement is subject to respondent demonstrating fitness and showing documentation of a $1,500 refund to his former client in the Maryland matter. We direct respondent's attention to the require-

---

*Mattingly,* 723 A.2d 1219 (D.C.1999). The Board noted that the record is devoid of any information as to why respondent did not respond to the Maryland disciplinary inquiries nor whether respondent was actually aware of the investigation. Further, the Board's report reasoned that even if respondent were found to have violated D.C. Rule of Professional Conduct 8.1(b) or 8.4(d), it would still recommend a thirty-day suspension with a fitness requirement.

4. Ordinarily, a closer examination of the reasons for the apparent disparity between the Maryland disbarment and a thirty-day suspension in the District might well be warranted. A possible partial explanation may lie in the fact that, until 2000, well after the occurrence of Respondent's misconduct, advances of legal fees in the District became the property of the attorney, contrary to the normal rule, apparently in effect in Maryland, that such advances are treated as the property of the client until earned and any misuse thus is misappropriation. *See In re Arneja,* 790 A.2d 552 (D.C.2002). Also, as the Board report indicates at several points, there are unsettled questions of possible dishonesty and other features. The Board took the facts only as and to the extent set forth in the Maryland disbarment order. However, given the virtually unique circumstances of this particular case, we see no purpose to be gained by any elongation of this proceeding. The likelihood of any application for readmission appears to be extremely remote.

5. Lewis also violated 8.4(d) (serious interference with the administration of justice), and 1.3(b)(1) (failure to seek the lawful objectives of a client). That Lewis violated the former supports the Board's contention that even if respondent violated 8.4(d) and 8.1(b), the recommended sanction of thirty days with a fitness requirement would remain.

ments of D.C. Bar F. XI, § 14(g), and their effect on his eligibility for reinstatement. *See* D.C. Bar R. XI, § 16(c).

*So ordered.*

### Appendix

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of: Richard C. Spitzer, respondent.

Bar Docket No. 007-02

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

Respondent has been a member of the Bar of the District of Columbia since December 7, 1973, although he has been administratively suspended since November 30, 1993, for nonpayment of dues. Until recently, he was also a member of the Bar of the State of Maryland. On December 6, 2001, the Court of Appeals of Maryland ordered Respondent disbarred for various disciplinary violations involving neglect of client matters and conduct prejudicial to the administration of justice. Bar Counsel argues that Respondent should receive reciprocal, but not identical discipline in this jurisdiction. Although we do not agree with all of Bar Counsel's submission, the Board agrees that nonidentical reciprocal discipline is in order, and recommends that Respondent be suspended for 30 days, with an additional requirement that he demonstrate his fitness to practice law before resuming practice in this jurisdiction.

We take the facts as recited in the opinion of the Maryland Court of Appeals, which disbarred Respondent based on an evidentiary record compiled in the Maryland Circuit Court for Anne Arundel County (the "Maryland Circuit Court") at a hearing in which Respondent did not participate. In January 1993, two individuals (the "complainants") who resided in the

State of New York contacted Respondent, who maintained a law office in Rockville, Maryland, about assisting them in enforcing in Maryland a New York judgment that they had obtained for more than $82,000 against persons who resided in Rockville. The complainants' New York attorney sent Respondent two checks, totaling $1,500, representing an advance payment. Respondent had the foreign judgment filed in the Maryland Circuit Court for Montgomery County. Respondent then requested more information from the complainants, who provided the information, but heard nothing further from Respondent. Respondent apparently did no further work on the case, and the Maryland Circuit Court specifically found that Respondent had earned no part of the advance payment. After learning that Respondent's office phone was disconnected, the complainants traveled to Maryland but discovered that Respondent had abandoned his office. Respondent had also moved from his last known home address, in Arlington, Virginia. He left no forwarding address, nor did he return any portion of the $1,500 retainer.

Maryland Bar Counsel initiated an investigation, but all efforts to contact Respondent failed. Maryland Bar Counsel wrote to Respondent at a private letter drop in Anchorage, Alaska, an address obtained from his law school alumni association, but received no response. According to Respondent's former wife, Respondent has moved around the country and has not established any fixed residence.

Maryland Bar Counsel then brought disciplinary charges against Respondent in the Maryland Circuit Court but was unable to secure personal service of the charges on Respondent because of the lack of a known address for Respondent. As provided under Maryland Rule 16–709d, Maryland Bar Counsel effected constructive service on Respondent by serving the Treasurer of the Maryland Clients' Security Trust Fund, which sent Respondent

notice of the pending proceedings by certified and ordinary mail to his addresses listed with the Trust Fund. Respondent made no response or appearance in the Maryland courts. Based on the above, the Maryland Court of Appeals concluded that Respondent violated Maryland Rules 1.1, 1.3, 1.4(a), 1.16(d), 8.1(b), and 8.4(d) and ordered Respondent disbarred.

Bar Counsel reported the Maryland Court of Appeals' order to the D.C. Court of Appeals (the "Court"), which suspended Respondent and directed us to recommend whether reciprocal discipline should be imposed. There is no evidence that Respondent actually received notice of these reciprocal disciplinary proceedings. The Board made several attempts to provide written notice of the pending reciprocal proceedings through Respondent's office and home addresses listed in the D.C. Bar records, but all such attempts were unsuc-

cessful. All mailings from the Board to Respondent were returned by the Postal Service, marked as "undeliverable as addressed ?return to sender" or "return to sender?attempted?not known?unable to forward."

Some form of reciprocal discipline is plainly appropriate. There is a "rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992). That presumption may be overcome if the record demonstrates, by clear and convincing evidence, the applicability of one of the exceptions set forth in D.C. Bar R. XI, § 11(c).[6] Respondent has not participated at all in these proceedings?not having received notice of the proceeding nor having supplied the Bar with an address where he may be reached?and certainly has not argued that any of those exceptions apply.[7]

6. We do not find any due process problem in the fact that Maryland Bar Counsel proceeded against Respondent through service of the disciplinary charges on his legal agent, the Clients' Security Trust Fund, after concluding that Respondent could not otherwise be served. The Supreme Court long ago decided that due process is not offended by a provision that designates a state official as the agent of an individual for service of process, when there is reason to believe that personal service on the individual could not be effectuated. *See Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927). Indeed, the District of Columbia has provisions for service of disciplinary charges by publication when Bar Counsel is unable to effect service of the petition on a respondent in the manner provided for under Board Rule 7.2 (personal service or registered or certified mail, return receipt requested). In such a circumstance, Bar Counsel must notify the Court and request the Court's direction as to how to proceed pursuant to D.C.Code § 11–2503(b). The Court may then direct service by publication or other means. *See* D.C.Code § 11–2503(b) ("[I]f it is established to the satisfaction of the court that personal service cannot be had, a certified copy of the charges and order shall be served upon that member by

mail, publication, or otherwise as the court directs.") The respondent in *In re Lockie*, 649 A.2d 546 (D.C.1994) (per curiam), was served by publication at the direction of the Court.

7. Because Respondent failed to report his Maryland disbarment to Bar Counsel, as required by D.C. Bar R. XI, § 11(b), and also failed to update his address with the D.C. Bar as required by D.C. Bar R. II, § 2(1), this case is somewhat like *In re Smith*, 812 A.2d 931 (D.C.2002), *In re McGowan*, 827 A.2d 31 (D.C.2003), and *In re Zackey*, Bar Docket No. 351–01 (BPR June 30, 2003). In those cases, the Executive Attorney of the Board attempted to effectuate notice of the proceeding on the respondents, but the mailings to the attorneys were returned as undeliverable. The Board and the Court treated the cases as ones in which the respondent had notice of the reciprocal proceeding but chose not to respond. Nonetheless, for reasons explained in the text, this case does not call for full application of the virtually automatic imposition of identical reciprocal discipline under *In re Spann*, 711 A.2d 1262 (D.C.1998), that usually follows when a respondent fails to participate in a reciprocal proceeding. Even Bar Counsel acknowledges that identical reciprocal discipline (disbarment) would be unjust, and as

There is no serious doubt, based on the evidentiary record compiled in the Maryland courts, that Respondent committed at least some misconduct that would be sanctionable in the District of Columbia. His unexplained abandonment of his clients, without returning any of the unearned advance payment, would have violated, at a minimum, our Rules 1.3(a), 1.4(a) and 1.16(d). By itself, that misconduct would likely warrant a short suspension in this jurisdiction. *See In re Lewis,* 689 A.2d 561 (D.C.1997) (ordering 30–day suspension where attorney entered appearance in a criminal case and then took no efforts on behalf of his client, but where attorney offered mitigating evidence).

We also believe that a fitness requirement is in order, even just for those violations. Respondent's conduct, both as to his abandonment of his clients and his nonparticipation in the disciplinary proceedings here and in Maryland, is bizarre on its face. Without an explanation?which of course he has not offered?we have absolutely no assurance that Respondent should be trusted with the representation of clients in the future. While, as we discuss below, we are not certain that Respondent's disappearance and failure to respond to Maryland Bar Counsel's investigation is independently sanctionable, protection of the public requires further inquiry before Respondent resumes practice. As part of the fitness inquiry, Respondent should submit evidence explaining why he disappeared, whether that disappearance affected any other clients, whether any impact on any other clients has been ameliorated, whether any conditions that led to that disappearance have abated, and what steps he has taken to avoid similar action in the future. In addition, Respondent should be required to demonstrate that he has refunded the advance payment, which the Maryland Circuit Court found he had not earned.[8]

The more difficult question is whether Respondent's unexplained failure to respond to Maryland Bar Counsel's investigation would have violated our Rule 8.1(b) or 8.4(d) as well. In light of our conclusion that Respondent should be suspended for 30 days and subjected to a fitness requirement for the violations discussed above, we do not believe it is necessary to reach a definitive conclusion on those questions. The answer would not materially affect our sanction recommendation, for even if violations of those Rules were also established, we would recommend the same sanction of a 30 day suspension with fitness. A definitive answer should await a case in which such a violation would make a material difference, but as explained in the attached footnote, should the Court reach this issue, we would not recommend that Respondent be found to have violated Rule 8.1(b) or Rule 8.4(d).[9]

we explain, we are not certain that, in this jurisdiction, a mere failure to respond to Bar Counsel's investigation, when there is no evidence that a respondent received any actual notice or actively attempted to evade that investigation, would violate Rule 8.1(b) or Rule 8.4(d).

8. We agree with Bar Counsel that disbarment is not warranted in the present case. We are not aware of any case, either original or reciprocal, in which our Court of Appeals has disbarred an attorney for similar conduct. Absent an indication that Respondent's misconduct was motivated by dishonesty, which does not appear in the record, disbarment would be far outside the range of sanctions applicable to a similar case, and would be manifestly unjust. Should Respondent seek to resume practicing law, however, Bar Counsel will be free to inquire into the underlying facts of the case to determine whether it did involve dishonesty, for in any fitness inquiry the nature of the underlying violation is relevant.

9. As Bar Counsel notes, Rule 8.1(b) prohibits an attorney from *knowingly* failing to respond reasonably to a lawful demand for information from Bar Counsel or other disciplinary

Accordingly, we recommend that Respondent be suspended for 30 days, and that before resuming the practice of law, he be required to demonstrate his fitness to practice law, and that he has refunded the advance payment to the complainants.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: s/Paul R.Q. Wolfson

Dated: July 25, 2003

All Members of the Board join in this Report and Recommendation.

authority. Based on this record, we do not find that Respondent had *actual* knowledge of Maryland Bar Counsel's investigation. Respondent may have had *constructive* knowledge of the *disciplinary proceedings* against him based on Maryland Bar Counsel's service of the petition for discipline on the Clients' Security Trust Fund, but nothing in the record suggests that Respondent had constructive knowledge of Maryland Bar Counsel's *investigatory request for information*, which formed the basis of the disciplinary charge in Maryland. And in any event, it is not clear whether in this jurisdiction, constructive knowledge of a lawful demand for information from Bar Counsel is sufficient to establish the "knowingly" element of Rule 8.1(b).

As for Rule 8.4(d), Bar Counsel correctly notes that, in the District of Columbia, a failure to respond to Bar Counsel's investigation, combined with a failure to comply with an order of the Board directing such a response, violates Rule 8.4(d). *See In re Giles*, 741 A.2d 1062 (D.C.1999); *In re Mattingly*, 723 A.2d 1219 (D.C.1999). In this case, only a failure to respond to Maryland Bar Counsel's inquiries is involved. The difficulty is that we have absolutely no information about why Respondent failed to respond to those inquiries. Nor, indeed, do we have confidence that Respondent has ever been made actually aware of the complaint against him in Maryland. It is true that Respondent did not maintain a point of contact with the Maryland Bar, as he was required to do, and also apparently did not make any provision for the forwarding of legal mail, including a complaint lodged with Maryland Bar Counsel by his clients. Nonetheless, we hesitate to find that these omissions by themselves constitute "conduct" on the part of Respondent that "seriously interferes with the administration of justice," in violation of Rule 8.4(d), absent further examination of the underlying facts. The record contains no suggestion, for example, that Respondent actively sought to evade service of process. Nor does the record indicate dishonest conduct by Respondent.