477 A.2d 1190
**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Edward S. WEISS.**

**Misc. Docket (BV) No. 31,
Sept. Term, 1983.**

Court of Appeals of Maryland.

July 13, 1984.

Melvin Hirshman, and Glenn M. Grossman, Bar Counsel and Asst. Bar Counsel for Atty. Grievance Com'n, Annapolis, for petitioner.

Edward S. Weiss, Silver Spring, for respondent.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COLE, Judge.

The Attorney Grievance Commission, by Bar Counsel, filed a petition for disciplinary action against Edward S.

Weiss, who was admitted to the Bar of Maryland in 1973 and maintains a law office in Silver Spring, Maryland. Bar Counsel alleged that on two specific occasions Mr. Weiss had approached persons suggesting that they retain him for the purpose of legal representation. Bar Counsel also alleged that Weiss had engaged in "a pattern of solicitation of prospective clients" and on one occasion had stated that "he would get the case against [the prospective client] *'nol prossed.'"* Pursuant to Maryland Rule BV9, we transmitted the matter to the Circuit Court for Montgomery County to be heard by the Honorable John J. Mitchell. After conducting a hearing on the charges, Judge Mitchell filed the following findings of fact and conclusions of law:

A hearing was conducted on January 27, 1984. It was stipulated that the entire record of the proceedings before the Inquiry Panel would be received in evidence. Charles Esser testified that Weiss approached him in the District Court in Hyattsville, Maryland, and Esser was told that the presiding judge (Honorable Bond Holford) was tough in sentencing on certain motor vehicle violations. Esser was charged with driving on a revoked or suspended license. Esser said he couldn't afford to retain Weiss. Esser also testified that his wife was pregnant and terrified. He was upset also. Judge Holford testified, via the transcript of the earlier proceedings, that he had occasion in the summer months of 1982 to discuss with respondent, in chambers, the appearance that respondent was soliciting clients in the District Court, and he told Weiss that it must stop. The conference ended amicably. The Judge further testified that on or about November 4, 1982, there was another chambers conference with respondent about respondent approaching one Braxton on that morning. Esser said that Weiss had offered to represent him for $150.00, offering to accept a $50.00 down payment and have the balance paid at a later time.

Weiss testified that when he spoke to Esser, it was to ask him if the Landlord and Tenant docket had concluded. He denied soliciting Esser or offering to represent him for the stated fee.

Victor L. Crawford, a member of the Bar for some twenty years testified that he had received complaints from members of the Sheriff's department that Weiss was soliciting clients in the District Court of Maryland located at Shady Grove Road in Rockville, Montgomery County, Maryland. These complaints were made to him when he was a State Senator and Chairman of the Committee on Judge's Budget. Mr. Crawford determined to find out what was going on when he was next in court. He stated that on two occasions in either October or November 1982, he had seen Weiss sitting in the back row of the courtroom. When a person went before the presiding judge, he would be told either to retain a lawyer or would be referred to the Public Defender. On one occasion, Mr. Crawford said that he saw Weiss follow a person out into the corridor who had been referred to the Public Defender. He saw Weiss take the person's arm and present the person a business card and engage the person in a conversation. Crawford saw this happen on another date when a person was told, by the presiding judge, to retain an attorney because of the serious nature of the offense. The person was again approached by Weiss and presented a business card. Mr. Crawford was unable to hear any of the conversation.

Deputy Sheriff Stanley Snouffer testified that he knew Mr. Weiss and had seen him on many occasions during the years 1982 and 1983 openly soliciting clients in the District Court in Rockville, Maryland. In defense, the respondent, Weiss, testified that he was frequently called by prospective clients at the last minute and would be unable to meet them at the office before trial. He would tell them to go to court and to get a continuance so as to obtain an attorney. Since neither client nor lawyer knew the other by appearance, Weiss said that he would sit in the back of the courtroom and when the client's name was called, Weiss would follow the client out of the courtroom, introduce himself and the retainer would be discussed. He denied soliciting clients, but at one junc-

ture made an observation that advertising is permitted and this form of an approach to a prospective client is no more than advertising.

Finally, Charles W. Bowen testified that he had been in the District Court in Rockville, Maryland in late July, 1982. He was advised that he should retain an attorney because of the serious nature of the charge. He testified that he was approaching his seventy-fifth birthday. He also said that on the July date, he was having difficulty with a leg and walked slowly. He and his wife were leaving the court and they were approached by Weiss. Weiss told Bowen that the charge against him sounded ridiculous. Weiss further told Bowen that he was an attorney and that he could handle the case for him for $250.00 whereas another attorney would probably charge $500.00. Mrs. Bowen stated that she had a friend who had a lawyer and that she could call the friend. Bowen refused his wife's suggestion. One of the reasons was that Weiss was charging a lower fee. Weiss also told Bowen that the case could be nol prossed. Bowen retained Weiss and paid him. Eventually, the Bowen case came before the court. The case was not nol prossed. The presiding judge found Bowen guilty. However, in disposition the judge entered a finding of Probation Before Judgment pursuant to Article 27, Section 641. Bowen testified that he was pleased with the way in which he had been represented by Weiss and would retain him again if he needed an attorney.

The respondent testified that he had only walked by the man and asked him how he was feeling. Mr. Weiss had noted that Bowen was limping and he was only inquiring about his health. He denied telling Bowen that the case could be nol prossed. He denied soliciting Mr. Bowen.

## CONCLUSIONS OF LAW

Based upon the foregoing, the Court is satisfied that Edward S. Weiss has, by his conduct, violated the following Disciplinary Rules.

First, Disciplinary Rule 1–102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule

(4) Engage in conduct involving
    dishonesty, fraud, deceit,
    or misrepresentations.

(6) Engage in any other conduct that
    adversely reflects on his fitness
    to practice law.

Disciplinary Rule 2–103

Recommendation of Professional Employment.

(B) A lawyer shall not recommend employment, as a [private] practitioner, of himself, his partner, or associate to a non-lawyer who has not sought his advice regarding employment of a lawyer.

Disciplinary Rule 2–104

Suggestion of Need of Legal Services.

(A) A lawyer who has given unsolicited advice to [a] layman that he should obtain counsel or take legal action shall not accept employment resulting from that advice, except (the exceptions are not applicable.)
. . . .

Code of Professional Responsibility, Rule 1230, Appendix F, Annotated Code of Maryland.

Weiss filed exceptions to the findings of the court. In general, he complains that the lower court did not specify how the stated disciplinary rules were violated. However, the circumstances upon which each violation was premised seem sufficiently clear to us.

■ For instance, a violation of Disciplinary Rule (DR) 1–102(A)(1), (4) and (6) would only have occurred if Weiss had guaranteed that the case against Bowen would be nol prossed. The trial court reached no such conclusion, finding rather that Weiss "told Bowen that the case *could* be nol prossed." [Emphasis supplied.] In fact, Bowen acknowledged at trial that he understood the term nol prosse

and knew that the prosecutor had to make this decision. Thus, the trial court's only finding on this point (as supported by Bowen's understanding that his lawyer could not directly control the disposition of the case) is that it was possible for the case to be nol prossed. However, no guarantees were made. Therefore, the trial court's conclusion that DR 1–102(A)(1), (4) and (6) was violated is inconsistent with and unsupported by its findings of fact.

The trial court also found a violation of DR 2–104(A), which precludes a lawyer from giving unsolicited advice to a layman that he should obtain counsel and then accepting employment resulting from that advice. However, we conclude that the trial court's findings of fact do not support the legal conclusion that this rule was violated. In neither of the two specific instances before the court did Weiss violate this rule. The trial court did not suggest that Bowen testified that Weiss told him he needed counsel. In fact, the judge before whom Bowen had appeared gave him this advice. As to Mr. Esser, it is clear that Weiss never served as his counsel. Finally, the testimony of Mr. Crawford and Deputy Sheriff Snouffer did not detail any instance in which this rule was violated. Crawford's testimony could support an inference that Weiss was soliciting clients, but not that he had violated DR 2–104(A). He stated that Weiss followed persons out of the courtroom after a judge suggested they needed an attorney, but he never heard what transpired. Similarly, the trial court noted that Snouffer had seen Weiss "soliciting" clients many times. However, the sheriff did not state that he had seen or heard Weiss tell someone he needed an attorney, and then represent that person.

Finally, the trial court found that Weiss violated DR 2–103(B). We conclude that this finding was supported by clear and convincing evidence. Although Weiss sought to explain what might have appeared to be solicitation as simply his way of meeting people that had contacted him but whom he did not know, the trial judge obviously found his testimony unworthy of belief. Rather, the trial judge

lent credence to the observations of Snouffer and Crawford, and to the direct experiences related by Esser and Bowen. This testimony amply supports a finding that Weiss solicited clients in violation of DR 2–103(B).

For the violations it believed had occurred, Bar Counsel recommended that Weiss be suspended from the practice of law for sixty days. For several reasons, we believe that a suspension would not be warranted for the violation we have found.

In *Attorney Griev. Comm'n v. Engerman*, 289 Md. 330, 424 A.2d 362 (1981), we considered a situation in which an attorney had improperly solicited clients in addition to other misconduct. In that case, Engerman made payments to an individual for referring cases. However, he also advanced money to clients for their personal needs and failed to maintain separate bank accounts to segregate his funds from those of his clients. In view of all the circumstances in that case, we concluded that a thirty day suspension was warranted. In *Attorney Griev. Comm'n v. Freedman*, 285 Md. 298, 402 A.2d 75 (1979), we encountered similar conduct by an attorney in soliciting clients. Freedman had paid an individual for referring personal injury cases, thereby violating DR 2–103(C). Because Freedman engaged in no other misconduct and it was unlikely that he would in the future, we found that a reprimand was the appropriate sanction.[1] In this case, Weiss did not engage in additional misconduct and Bar Counsel admitted at oral argument that he no longer appeared to be soliciting clients. We think it unlikely that he will ever resume; therefore, this case is much closer to *Freedman* than to *Engerman*.

---

**1.** In *Attorney Griev. Comm'n v. Kahn*, 290 Md. 654, 431 A.2d 1336 (1981), we encountered a violation of DR 2–103(B); however, Kahn's transgressions were so numerous that it is impossible to use the sanction imposed in that case (disbarment) as a guide in the case *sub judice. See also Attorney Griev. Comm'n v. Klauber*, 289 Md. 446, 423 A.2d 578, *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

■ We note that with the growth of legal advertising there may be those who look on solicitation as nothing more than advertising in person. We stress that this is not the case. Solicitation involves individual contact that is quite different from the abstract and impersonal nature of television, radio, newspaper advertisements or other forms of advertisement and is clearly prohibited by the disciplinary rules governing the conduct of those admitted to the Bar of this State. Therefore, we believe that although a suspension may not be warranted in these circumstances, this misconduct requires a public reprimand. *See also Re Tribble*, 94 Ariz. 129, 382 P.2d 237 (1963) (attorney was given public reprimand for sending letter to accident victim offering to handle case); *Florida Bar v. Abramson*, 199 So.2d 457 (Fla.1967) (attorney received public reprimand for seeking employment with persons at hospital even though he may have been there in response to a message that someone wanted a lawyer); *Re Eisenberg*, 95 Wis.2d 525, 290 N.W.2d 683 (1980) (attorney received public reprimand for approaching accident victim in restaurant to seek employment).

■ However, we do not hesitate to state that a persistent or more egregious course of conduct in violation of our disciplinary rules may lead to much more severe sanctions. *See, e.g., Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) (affirming Ohio Supreme Court's indefinite suspension of lawyer who went to hospital to seek to represent accident victim and also went to the home of her passenger the day after she was released from the hospital); *In Re Campbell*, 95 Idaho 87, 502 P.2d 1100 (1972) (six months' suspension for attorney who repeatedly called on private homes without invitation in an attempt to sell estate planning services); *Kentucky State Bar Association v. Stivers*, 475 S.W.2d 900 (Ky.1971), *cert. denied*, 406 U.S. 968, 92 S.Ct. 2412, 32 L.Ed.2d 666 (1972) (attorney suspended for one year for knowingly causing a letter to be written to an accident victim for the purpose of solicitation).

Accordingly, we conclude that a public reprimand is the proper sanction for Weiss's violation of DR 2–103(B).

IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS PURSUANT TO MARYLAND RULE BV 15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST EDWARD S. WEISS.

ELDRIDGE, Judge, dissenting:

In light of the evidence in this case, and the permissibility of lawyers soliciting through advertising, I would impose no sanction greater than an unpublished reprimand.